UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------x
                              :
ALLISON D. LEWIS              :    Civ. No. 3:16CV01091(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :
ACTING COMMISSIONER OF        :
SOCIAL SECURITY               :    March 19, 2018
                              :
------------------------------x

## RULING ON CROSS MOTIONS

Plaintiff Allison D. Lewis ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") under the Act. Plaintiff has moved to reverse the decision of the Commissioner, or in the alternative, for remand to the Social Security Administration for a new hearing. [Doc. #15]. Defendant has filed a cross motion seeking an order affirming the decision of the commissioner. [Doc. #16].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #15]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #16]** is **GRANTED.**

## I.   <u>PROCEDURAL HISTORY</u>[1]

Plaintiff filed an application for DIB on September 24, 2012, alleging disability beginning August 1, 2008. <u>See</u> Certified Transcript of the Administrative Record, compiled on September 20, 2016, Doc. #12 (hereinafter "Tr.") 141-144. Plaintiff's application was denied initially on November 15, 2012, <u>see</u> Tr. 94-96, 106-108, and upon reconsideration. <u>See</u> Tr. 91-93.

Plaintiff filed a written request through counsel for a hearing on September 24, 2013. <u>See</u> Tr. 97, 98-105. On August 6, 2014, plaintiff, represented by Attorney Robert Reger, who also represents her before this Court, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Robert DiBiccaro. <u>See</u> Tr. 27-61. On October 31, 2014, the ALJ issued an unfavorable decision. <u>See</u> Tr. 11-21. On May 2, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's October 31, 2014, decision the final decision of the Commissioner. <u>See</u> Tr. 1-6. The case is now ripe for review under 42 U.S.C. §405(g).

---

[1] With her motion, plaintiff provided a medical chronology and a proposed Stipulation of Facts. <u>See</u> Doc. #15-1 at 17-19. Defendant has concurred with all assertions therein except item #6 in the proposed stipulation. <u>See</u> Doc. #16-1 at 2.

Plaintiff timely filed this action for review and now moves to reverse the Commissioner's decision, or in the alternative, to remand for a new hearing. [Doc. #15]. On appeal, plaintiff argues:

1. The ALJ failed to properly consider all of the evidence regarding plaintiff's non-severe impairments, plaintiff's mania and hypomania, and plaintiff's neuropathy;

2. The ALJ erred in assessing plaintiff's credibility; and

3. The ALJ erred in relying exclusively on the Medical-Vocational Guidelines (the "Grids") without obtaining vocational expert ("VE") testimony.

See generally Doc. #15-1 at 11-14. As set forth below, the Court finds that the ALJ did not err as contended by plaintiff, and that the ALJ's determination is supported by substantial evidence.

## II.  <u>**STANDARD OF REVIEW**</u>

The review of a Social Security disability determination involves two levels of inquiry. <u>First</u>, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. <u>Second</u>, the Court must decide whether the determination is supported by substantial evidence. <u>See</u> <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998) (citation

omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing Tejada v. Apfel, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set
forth with sufficient specificity to enable [a reviewing court]
to decide whether the determination is supported by substantial
evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)
(alterations added) (citing Treadwell v. Schweiker, 698 F.2d
137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject
the testimony of any witness, but a "finding that the witness is
not credible must nevertheless be set forth with sufficient
specificity to permit intelligible plenary review of the
record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-
61 (2d Cir. 1988) (citing Carroll v. Sec. Health and Human
Servs., 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a
finding is potentially dispositive on the issue of disability,
there must be enough discussion to enable a reviewing court to
determine whether substantial evidence exists to support that
finding." Johnston v. Colvin, No. 3:13CV00073(JCH), 2014 WL
1304715, at *6 (D. Conn. Mar. 31, 2014) (citing Peoples v.
Shalala, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4,
1994)).

It is important to note that in reviewing the ALJ's
decision, this Court's role is not to start from scratch. "In
reviewing a final decision of the SSA, this Court is limited to
determining whether the SSA's conclusions were supported by

~ 5 ~

substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (quoting Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 507 (2d Cir. 2009)). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, a plaintiff must demonstrate that he or she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.

§423(d)(2)(A); 20 C.F.R. §404.1520(c) (requiring that the
impairment "significantly limit[] ... physical or mental ability
to do basic work activities" to be considered "severe").[2]

There is a familiar five-step analysis used to determine if
a person is disabled. See 20 C.F.R. §404.1520. In the Second
Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is
> currently engaged in substantial gainful activity. If he
> is not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly
> limits his physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed
> in Appendix 1 of the regulations. If the claimant has
> such an impairment, the Secretary will consider him
> disabled without considering vocational factors such as
> age, education, and work experience; the Secretary
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful
> activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per
curiam). If and only if the claimant does not have a listed

---

[2] Some of the Regulations cited in this decision were amended,
effective March 27, 2017. Throughout this decision, and unless
otherwise specifically noted, the Court applies and references
the versions of those Regulations that were in effect at the
time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x
801, 805 n.2 (2d Cir. 2012) (applying and referencing version of
regulation in effect when ALJ adjudicated plaintiff's claim);
see also Alvarez v. Comm'r of Soc. Sec., No. 14CV3542(MKB), 2015
WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court
considers the ALJ's decision in light of the regulation in
effect at the time of the decision." (citing Lowry, 474 F. App'x
at 805 n.2)).

impairment, the Commissioner engages in the fourth and fifth
steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens
of production and persuasion, but if the analysis proceeds to
the fifth step, there is a limited shift in the burden of proof
and the Commissioner is obligated to demonstrate that jobs exist
in the national or local economies that the claimant can perform
given [her] residual functional capacity." Gonzalez ex rel.
Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243
(2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003));
Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per
curiam)). The Residual Functional Capacity ("RFC") is what a
person is still capable of doing despite limitations resulting
from his or her physical and mental impairments. See 20 C.F.R.
§404.1545(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions

based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV. **THE ALJ'S DECISION**

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 21. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from the alleged onset date of August 1, 2008, through December 31, 2014, the date of last insured. See Tr. 13. At step two, the ALJ found that plaintiff had the severe impairments of "traumatic brain injury, mood disorder, and Reynaud's disease." Tr. 14. The ALJ determined that plaintiff's "hypothyroidism, hearing loss, herniated cervical discs, torn left rotator cuff, and headaches" were non-severe impairments. Id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P,

App. 1. <u>See</u> Tr. 14-16. The ALJ specifically considered Listings 12.02 (Organic Mental Disorders) and 12.04 (Affective Disorders). <u>See</u> <u>id.</u>; <u>see also</u> Tr. 70, 84 (identifying the listings considered at the initial and reconsideration levels). Before moving on to step four, the ALJ found plaintiff had the RFC to perform the full range of work at all exertional levels, as defined in 20 C.F.R. §404.1567, with the following non-exertional limitations: "she can understand, remember, and carry out simple instructions and routine repetitive tasks, can work in a setting free of hazards such as unprotected heights and moving machinery, and can work in a setting free of loud background noises." Tr. 16.

At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. <u>See</u> Tr. 20. At step five, after considering plaintiff's age, education, work experience and RFC, and after consulting the Medical-Vocational Guidelines, found at 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ found that there existed jobs in significant numbers in the national economy that plaintiff could perform. <u>See</u> Tr. 20.

**V.    <u>DISCUSSION</u>**

Plaintiff raises three arguments in support of reversal or remand. The Court will address each argument in turn. However, the Court pauses first to examine the claims plaintiff made

before the ALJ. Plaintiff was represented at the administrative hearing stage, and before the Appeals Council, by the same counsel who represents her in this appeal. In his pre-hearing Memorandum, counsel asserted that plaintiff was disabled solely due to mental disorders and an "inability to focus, concentrate and organize her thoughts and inability to maintain persistence of pace[.]" Tr. 233. **No claim of disability based on physical impairments was made.** Counsel reiterated this position at the administrative hearing, asserting disability only on the basis of mental and cognitive limitations. <u>See</u> Tr. 34-35. While there was some mention during the administrative hearing of physical ailments, it was generally only in response to the ALJ's questioning. <u>See, e.g.,</u> Tr. 46 (In response to ALJ's inquiry regarding "other problems" plaintiff reported "chronic headaches," tinnitus, and "two bulging discs."); Tr. 48 (plaintiff's report of Raynaud's disease and chronic headaches); Tr. 51 (brief discussion of hypothyroidism).

The ALJ's decision, somewhat unsurprisingly in light of this background, focused on plaintiff's assertion that she was rendered disabled by mental disorders and an "inability to focus, concentrate and organize her thoughts and inability to maintain persistence of pace[.]" Tr. 233. Before the Appeals Council, plaintiff objected to the ALJ's ruling on four bases:

(1) Failure to consider plaintiff's "impairment of lower extremity neuropathy;" (2) failure to incorporate into the RFC any limitations related to "lower extremity neuropathy or herniated cervical discs;" (3) failure to call a VE to testify; and (4) failure to give proper weight to the opinion of Consultative Examiner Dr. Lance Hart. Tr. 238-39. On appeal to this Court, plaintiff arguably raises the first, second, and third of these arguments. The fourth argument is made in an oblique way through plaintiff's assertion that the ALJ failed to adequately address her possible mania or hypomania.

The Supreme Court has held that where a claimant has exhausted her remedies, but fails to raise an issue before the Appeals Council, that failure may not prevent her from pursuing that particular issue before the Court. See Sims v. Apfel, 530 U.S. 103, 112 (2000) ("Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues."). However, Sims limited its consideration to arguments not raised at the Appeals Council. "The Sims Court did not address whether a claimant would waive judicial review by failure to raise an issue before the ALJ." Plante v. Astrue, No. 06CV972(LEK)(VEB), 2009 WL 1951352, at *2 (N.D.N.Y. July 2, 2009). Where a claimant fails to raise an issue **before the ALJ,**

in the first instance, the equities and the weight of authority

support a conclusion that judicial review of the issue is

precluded.

> We have held that appellants must raise issues at their
> administrative hearings in order to preserve them on
> appeal before this Court. See Avol v. Secretary of Health
> & Human Serv., 883 F.2d 659, 660 (9th Cir. 1989). Meanel
> attempts to evade this well-established rule by claiming
> that Avol involved Medicare benefits and that this
> Circuit has never published an opinion applying the
> waiver rule in a Social Security benefits case. Meanel
> argues that it would be unfair to apply the waiver rule
> in her case because disability benefits hearings are
> non-adversarial in nature. This fairness argument might
> be more persuasive if Meanel had not been represented by
> counsel. Yet she was represented by counsel who knew
> that all relevant evidence should have been brought to
> the ALJ's attention. We now hold that, at least when
> claimants are represented by counsel, they must raise
> all issues and evidence at their administrative hearings
> in order to preserve them on appeal. The ALJ, rather
> than this Court, was in the optimal position to resolve
> the conflict between Meanel's new evidence and the
> statistical evidence provided by the VE. We will only
> excuse a failure to comply with this rule when necessary
> to avoid a manifest injustice, which will not occur here.

Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999), as amended

(June 22, 1999). Some cases within the Ninth Circuit have

distinguished Meanel where a plaintiff raised an issue at the

Appeals Council, but not at the ALJ level, but those cases tend

to be ones in which the argument not made was at Step Five --

when the Commissioner has the burden. The potentially waived

argument here relates to the issue of impairments, on which

plaintiff has the burden. See, e.g., Lamear v. Berryhill, 865

F.3d 1201, 1206 (9th Cir. 2017) ("Unlike the claimant in Meanel,

Lamear raised this issue to the Appeals Council. And more

importantly, our law is clear that a counsel's failure does not

relieve the ALJ of his express duty [at Step Five] to reconcile

apparent conflicts through questioning[.]"); Murry v. Colvin,

No. 1:14CV01349(JLT), 2016 WL 393859, at *5 (E.D. Cal. Feb. 2,

2016) ("First, Plaintiff did present the issue to the Appeals

Council who refused to reconsider the ALJ's determination.

Second, at issue here was the obligation of the ALJ to clarify

the record. Notably, at step five, the Plaintiff bears no burden

of proof and, of course, the ALJ did not announce the step five

determination at the hearing.").

"Although it appears that the Second Circuit has not yet

ruled on this precise issue, a number of district courts in this

Circuit have found that failure to raise an issue before the ALJ

waives that issue's review by the District Court." Watson v.

Astrue, No. 08CV1523(DAB)(JCF), 2010 WL 1645060, at *3 (S.D.N.Y.

Apr. 22, 2010) (collecting cases); see also, e.g., Sullivan v.

Comm'r of Soc. Sec., 694 F. App'x 670, 671 (11th Cir. 2017) ("In

a case like this, persuasive authority convinces us that this

claim cannot proceed because Sullivan failed to allege it to the

ALJ and therefore could not have proven her disability on this

basis."); Haskins v. Comm'r of Soc. Sec., No. 5:05CV292, 2008 WL

5113781, at *16 (N.D.N.Y. Nov. 25, 2008) (finding argument waived where plaintiff questioned VE's qualifications for the first time before court "without allowing the ALJ the opportunity to inquire into the VE's knowledge and experience"); Harvey v. Astrue, No. 5:05CV1094(NAM), 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) ("Plaintiff's counsel did not challenge the basis for the vocational expert's testimony and failed to raise any objection to the conduct of the ALJ until now. Accordingly, the objections are forfeited.").

As a practical matter, the approach pursued by plaintiff's counsel before the ALJ put the ALJ in an impossible position. Plaintiff asserted -- both in the written pre-hearing Memorandum and in oral presentation -- only mental health bases for disability. Plaintiff's counsel did not ask the ALJ to consider any basis for disability other than Listing 12.02 and her "inability to focus, concentrate and organize her thoughts[.]" Tr. 231-33. While a disability hearing is not an adversarial process, it places far too great a burden on the ALJ to ask that he consider theories of disability **entirely unrelated to those advanced by the claimant**.

Where a plaintiff raises "a wholly new claim, or attempt[s] to introduce new evidence[]" to the Court that was not presented before the ALJ, waiver may be appropriate. Torres v. Colvin, No.

3:13CV1914(JBA), 2016 WL 1182978, at *4 (D. Conn. Mar. 28, 2016). However, the case law is unsettled on the question of whether an argument **raised before the Appeals Council, but not before the ALJ**, is waived on appeal to the court. The Court is therefore reluctant to base its ruling in this matter solely on a finding of waiver. Upon review of the full record, the Court finds, as will be set forth in detail below, that the ALJ did not commit error on any of the bases asserted by plaintiff. Thus, the question of whether such bases are properly raised is not one the Court need reach. **Counsel should be aware, however, that in future cases, failure to raise an issue before the ALJ that could have been raised at that time, particularly an issue that goes to the heart of the disability determination, may result in waiver of that issue on appeal to the court.**

The Court turns now to plaintiff's contentions of error.

### A.   Consideration of All of the Evidence

Plaintiff takes issue with the ALJ's assessment of the medical evidence of record. See Doc. #15-1 at 11-14. Specifically, plaintiff asserts that the ALJ failed to properly consider all of the evidence regarding plaintiff's non-severe impairments, plaintiff's mania and hypomania, and plaintiff's neuropathy. See Doc. #15-1 at 11-14.

### 1. *Non-Severe Impairments*

Plaintiff contends that the ALJ erred by not considering her non-severe impairments, other than her hearing loss, in determining her RFC. See id. at 11. The body of her argument, however, seems to assert that the ALJ erred in not finding these impairments to be severe. For instance, plaintiff argues that the assessment of plaintiff's torn rotator cuff as non-severe "is difficult to understand," and that his assessments of plaintiff's hypothyroidism and herniated discs are "questionable[.]" Id. at 12.

In this portion of the brief, plaintiff makes only one reference to the Record, as follows: "And plaintiff's headaches, also found to be 'non-severe' may well be a consequence of her traumatic brain injury (as suggested by Dr. Mednick, at R. 420), which the ALJ did find severe." Id. at 12-13. This is a misrepresentation of the record cited. In fact, that record, a report by Dr. Mednick, states that plaintiff's cognitive difficulties "are likely multifactorial," that is, they have multiple causes including the "remote effects of 2 concussions" and headaches, amongst others. Tr. 420. The report does not indicate that the headaches are caused by the TBI. But more significantly, plaintiff does not argue that the ALJ failed to

adequately consider the TBI, which was, indeed, found to be a severe impairment. <u>See</u> Tr. 14.

Plaintiff provides no basis on which to find that the ALJ's assessment of certain impairments as "non-severe" is not supported by the record. "The claimant bears the burden of presenting evidence establishing severity." <u>Zenzel v. Astrue</u>, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012). The record provides substantial evidence to support the ALJ's findings. The record establishes that plaintiff had surgery for her left rotator cuff in 2008, and there is no indication that a shoulder injury limited her abilities. <u>See</u> Tr. 166 (handwritten self-report by plaintiff stating that she had surgery on <u>left</u> arm on April 23, 2008). Later reports state that she was seen for follow-up regarding a <u>right</u> shoulder problem, <u>see</u> Tr. 321-22, and there is no report of difficulty with the left shoulder.[3] As to the right shoulder, the report states that plaintiff had "5/5 strength except 4+ in scaption" and only mild limitations in range of movement. Tr. 321. Plaintiff's counsel asserted at the hearing that she had not sought any treatment after March 2013. <u>See</u> Tr. 32. Indeed, plaintiff did not list the rotator cuff injury as

---

[3] Plaintiff's counsel submitted a pre-hearing Memorandum to the ALJ, which limited the shoulder claim to a "[t]orn left rotator cuff." Tr. 231. The medical chronology provided to the Court includes no mention of a right shoulder injury. <u>See</u> Doc. 15-1 at 18.

affecting her ability to work in her disability applications. See Tr. 182 (listing various conditions, but not rotator cuff); Tr. 205 (describing conditions that affect ability to care for her personal needs, not listing rotator cuff). Her only mention of an exertional impairment during her administrative hearing testimony was to say she has "some restrictions of lifting and things from my car accidents." Tr. 59.

Likewise, there is substantial evidence to support the ALJ's assessment of plaintiff's herniated cervical discs as non-severe, and plaintiff points to nothing in the record that would contradict the ALJ's finding. See Tr. 182 (no mention of back problems in list of medical conditions limiting ability to work); Tr. 205 (no mention of back or neck pain as affecting plaintiff's ability to care for personal needs); Tr. 277 (March 31, 2011: unremarkable neck and musculoskeletal examinations); Tr. 319 (August 24, 2011, cervical spine examination: "Cervical range of motion is mildly limited. The patient has mild tenderness over both trapezii."); Tr. 419 (November 19, 2012, physical examination: "Free range of movement of the cervical spine and shoulders without point tenderness on palpation of the posterior cervical spine, of the paraspinal musculature or of the shoulders."). Plaintiff did assert on one occasion that she has "difficulty driving due to neck and shoulder pain," Tr. 215,

but she testified at the hearing that she drives every day, and made no claim of any impairment interfering with that ability. See Tr. 37-38. In a 2012 evaluation with Dr. Lance Hart, plaintiff reported that she takes the dog to her mother's house, has breakfast, exercises by walking the dog or going to the gym, and takes care of the bills. See Tr. 412. During a 2012 evaluation, Dr. Mednick found plaintiff to have no difficulty standing from sitting position, normal posture, normal gait, and no remarkable issues with her back or hips. See Tr. 419-20. As of October 2010, plaintiff indicated she was walking 3-5 miles per day. See Tr. 260. In March 2012, she reported walking and visiting the gym twice a week. See Tr. 262.

As to hypothyroidism, plaintiff offers no record citations related to this condition, or its alleged impact on her functioning. Plaintiff's medical chronology notes that an Assessment dated January 25, 2010,[4] refers to a hypothyroidism diagnosis. See Doc. #15-1 at 18. The chronology further asserts that a July 12, 2010, medical report reveals the appearance of "chronic fatigue" and the report cited does state that plaintiff has a history of Lyme disease, chronic fatigue, and hypothyroid. Tr. 268. However, these reports do not support a finding that

---

[4] Plaintiff's chronology erroneously assigns this January 2010 report a date of September 22, 2009.

hypothyroidism was to blame for any chronic fatigue, or that it actually resulted in any limitations on plaintiff's activities. As noted above, plaintiff reported being extremely active, in spite of her complaints of fatigue. Again, the record supports the ALJ's finding that hypothyroidism was not a severe impairment.

To the extent that plaintiff mentions, in passing, the relation of these non-severe impairments to the ALJ's RFC determination, any such argument is not adequately presented to permit meaningful review. See Doc. #15-1 at 13. See Schneider v. Kissinger, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990))). Here, plaintiff makes no argument, and cites to no records, suggesting that the non-severe impairments identified by the ALJ impacted her ability to function such that they should have been accounted for in the RFC. The mere presence of a diagnosis is not equivalent to an inability to perform substantial gainful activity. See, e.g., Crysler v. Astrue, 563 F. Supp. 2d 418, 440 (N.D.N.Y. 2008) ("Such a diagnosis does not translate into an automatic finding of disability; it is not the presence of such a medical condition, but rather its

limitations, which inform the question of whether or not a plaintiff is under a disability." (citing Alvarez v. Barnhart, No. 03CV8471(RWS), 2005 WL 78591, at *2 (S.D.N.Y. Jan. 12, 2005))); Rodriguez v. Califano, 431 F. Supp. 421, 423 (S.D.N.Y. 1977) ("The mere presence of a disease or impairment is not disabling within the meaning of the Social Security Act. It must be shown that the disease or impairment causes functional limitations which preclude plaintiff from engaging in any substantial gainful activity." (collecting cases)).

## 2. *Mania and Hypomania*

Plaintiff dedicates one paragraph to the assertion that the ALJ failed to adequately consider the possibility that plaintiff suffered from mania or hypomania. See Doc. #15-1 at 13. Here, plaintiff wonders aloud whether plaintiff might be suffering from episodic mania, asking: "Isn't she entitled to an inquiry as to how frequently these episodes occur and how long they last?" Doc. #15-1 at 13.[5] The ALJ found that Dr. Hart's concern

---

[5] To the extent this rhetorical question could be construed as an argument that the ALJ failed to develop the record, the argument is not sufficiently articulated to permit the Court to review it. Furthermore, counsel did not raise such an argument before the Appeals Council, and in fact disclaimed any need for additional evidence before the ALJ. The ALJ asked: "[A]side from Dr. Zabrocky's record, are there any gaps in the record where there was treatment that you have not yet obtained the records?" Tr. 34. Counsel responded: "No gap." Id. Counsel then clarified that there were substantial gaps in plaintiff's **treatment,** but that all records had been obtained. See id.; see also Tr. 230

that plaintiff was in a manic state was anomalous, as the other doctors who evaluated plaintiff found no evidence of mania. <u>See</u> Tr. 17. Dr. Winstanley did include "r/o hypomania" in the summary of his August 2013 report, but made no particularized findings. <u>See</u> Tr. 446. More significantly, plaintiff points to no reports by any of her treating practitioners of mania or hypomania. Dr. Hart noted that plaintiff's recently having begun using Cymbalta might have been "a significant factor in her manic presentation today." Tr. 414. He further observed that it seemed unlikely she had been in a manic state for long, since other physicians had not noted it. <u>See</u> Tr. 415. In sum, one evaluator, who met plaintiff on one occasion, reported that at the time of that meeting, plaintiff was manic. The lack of other record evidence of mania or hypomania is sufficient to support the ALJ's conclusion that Dr. Hart's observation was anomalous. <u>See</u> <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1553 (2d Cir. 1983) (The Commissioner "is entitled to rely not only on what the record says, but also on what it does not say[.]" (citing <u>Miles v. Harris</u>, 645 F.2d 122, 124 (2d Cir. 1981))).

---

(letter from counsel providing additional medical records and asking that the ALJ "close the record and consider the case").

### 3.  *Neuropathy*

Plaintiff's argument regarding neuropathy begins by criticizing the ALJ for making "only passing reference to the plaintiff's neuropathy[.]" Doc. #15-1 at 14. This assertion is followed by a two-sentence argument, citing no evidence of record and no case law. Plaintiff's argument appears to be that it was error for the ALJ to consider plaintiff's self-reported activities of daily living to find that her neuropathy was not a severe impairment and/or did not require RFC modifications. As noted above, plaintiff reported, in her submissions to the Commissioner and to her doctors, that she was very active. See, e.g., Tr. 37-38; 260; 262; 412; 419-20. While there are notations regarding neuropathy throughout the record, there is also substantial evidence to support the ALJ's conclusion that neuropathy did not substantially limit plaintiff's activities. See Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the [SSA], and not this court, to weigh the conflicting evidence in the record.").

For these reasons, the Court finds that the ALJ's evaluation of the non-severe impairments, mania and hypomania, and neuropathy are all supported by substantial evidence in the record.

**B.   Credibility Determination**

Plaintiff next contends that the ALJ erred in his assessment of plaintiff's credibility. See Doc. #15-1 at 14. Specifically, plaintiff contends that the ALJ should have considered her good work history. See id. Defendant responds that "[t]he ALJ appropriately assessed Plaintiff's allegations as to the limiting effects of her impairments in light of the medical and non-medical evidence[.]" Doc. #16-1 at 21.

The ALJ's decision states that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible[.]" Tr. 17. The ALJ determined that plaintiff's "allegations are partially credible," and concluded that her "allegations regarding the intensity, persistence, and limiting effects of her impairments is not consistent with the longitudinal evidence." Tr. 19 (sic). In making this determination the ALJ pointed to (1) the plaintiff's activities of daily living, and (2) the objective medical evidence, as inconsistent with plaintiff's subjective allegations. See Tr. 16-17, 19.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation

marks and citation omitted). The regulations set forth a two-step process that the ALJ must follow in evaluating plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §404.1529(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §404.1529(c). The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than medication," that plaintiff has received for relief of pain or other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions due to pain or other symptoms." Id. The ALJ must consider all evidence in the case record. See Social Security Ruling ("SSR") 96-7p, 1996 WL

374186, at *5 (S.S.A. July 2, 1996). The credibility finding "must contain specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4.

At the first step of this two-step analysis, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" Tr. 17. At the second step, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" Id. The ALJ's credibility analysis is well-supported by the record. The ALJ properly relied on the full record, including the objective medical evidence, plaintiff's treatment notes, and plaintiff's activities of daily living.

In assessing plaintiff's symptoms, the ALJ considered the objective medical evidence, including the "longitudinal medical record," and found that it was "not consistent with her allegation of disability." See Tr. 17; see also Tr. 19. The ALJ specifically considered medical imaging of plaintiff's brain and three neuropsychological examinations. See Tr. 17-19. After considering the medical evidence, the ALJ reviewed plaintiff's

self-reported daily activities and determined that they did not support her allegation of disability. See Tr. 19. Specifically, the ALJ considered plaintiff's ability to: shop; exercise; frequently walk; frequently visit her mother; and volunteer at her church. See Tr. 15, 19. The ALJ also considered the consistency of plaintiff's statements with the evidence. See Tr. 19.

"[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses." Williams, 859 F.2d at 261. The Court finds that the ALJ properly considered the factors listed in 20 C.F.R. §404.1529(c). The ALJ explicitly considered plaintiff's activities of daily living, along with the objective medical evidence, and considered plaintiff's subjective allegations. See generally Tr. 16-19. Each of the reasons cited by the ALJ in support of his adverse credibility finding is supported by substantial evidence of record. See, e.g., Tr. 44-45, 52, 260, 262, 241-44, 412, 443-46. The ALJ also properly considered the consistency of plaintiff's statements with the evidence of record. See Burnette v. Colvin, 564 F. App'x 605, 609 (2d Cir. 2014) ("Here, the ALJ found inconsistencies between [plaintiff's] statements and the evidence. ... Thus, the ALJ acted well within his discretion in

concluding that [plaintiff] was less than credible on at least some of her claims.").

Plaintiff contends that the ALJ's credibility determination is not supported by substantial evidence because the ALJ erred by not considering her "very fine work." Doc. #14-1 at 14. "Although it is true that 'a good work history may be deemed probative of credibility,' it remains 'just one of many factors' appropriately considered in assessing credibility." Campbell v. Astrue, 465 F. App'x 4, 7 (2d Cir. 2012) (quoting Schaal v. Apfel, 134 F.2d 496, 502 (2d Cir. 1998)). Although the ALJ did not specifically reference plaintiff's good work history in his decision, there is no basis for plaintiff's claim that the ALJ did not consider it. The ALJ was aware of plaintiff's work history, based on her testimony at the administrative hearing, see Tr. 39-40,[6] and indeed considered this in the disability analysis when he concluded that plaintiff was unable to perform any past relevant work. See Tr. 20; see also Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011). As here, where other factors were considered which weighed against a substantial credibility finding, the ALJ did not err by failing to specifically reference plaintiff's good work history. See Campbell, 465 F.

---

[6] Also included in the record, and referenced at the administrative hearing, is plaintiff's resume. See Tr. 315.

App'x at 7; see also Wavercak, 420 F. App'x at 94 ("That [plaintiff's] good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination."). Accordingly, there is no error.[7]

Where the ALJ has identified a number of specific reasons for his credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). "It is the function of the Secretary, not [the court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll, 705 F.2d at 642; see also Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979) ("The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true

---

[7] Plaintiff "would suggest, as well, that the constancy of plaintiff's complaints to her doctors, and in her testimony, should also have been considered." Doc. #15-1 at 14. This suggestion is not supported by any citations to the record or case law. Accordingly, the Court considers this argument waived and declines to address the same. See, e.g., Johnson v. Panetta, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties. To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (internal quotation marks and citations omitted)).

extent of the pain alleged by the claimant."). Moreover, the ALJ
had the opportunity to personally observe plaintiff and her
testimony, something the Court cannot do. Substantial evidence
supports the ALJ's findings as to plaintiff's credibility, and
therefore, the Court finds no error.

### C.   Reliance on Medical-Vocational Guidelines

Plaintiff next argues that the ALJ should have been
required to obtain the testimony of a VE, because the ALJ's RFC
determination should have included non-exertional limitations on
plaintiff's ability to work. <u>See</u> Doc. #15-1 at 15. Defendant
responds that the ALJ appropriately relied on the Grids at step
five. <u>See</u> Doc. #16-1 at 24-25.

The Court again begins by noting that plaintiff (and
counsel) did not object, while before the ALJ, to the fact that
no VE had been called. At the conclusion of the hearing, counsel
and the ALJ discussed what needed to be done to complete the
record. No mention was made of the need to call a VE. <u>See</u> Tr.
59-61. Courts have found that failure to object to the
hypothetical posed to a VE during the hearing resulted in a
waiver of the right to challenge the hypothetical on appeal.
<u>See, e.g.</u>, <u>Bossey v. Comm'r of Soc. Sec.</u>, No.
8:07CV116(LEK)(VEB), 2009 WL 1293492, at *12 (N.D.N.Y. May 5,
2009). The failure to object to the absence of VE testimony

likewise should result in waiver of the right to assert such an error. However, as discussed above, the Court declines to hold that plaintiff waived this argument entirely, because it was raised before the Appeals Council. See Tr. 239.

The ALJ was not required to call a VE in this case.

> In determining whether a claimant is disabled under the Social Security Act, an ALJ must begin with the Medical-Vocational Guidelines found in Appendix 2 of 20 C.F.R. Subpart P. These guidelines, also known as "grid rules," are a set of formulae used to determine whether a given claimant is disabled or healthy enough to perform work. The rules take into account such factors as age, education level, previous work experience, and physical limitations.

Lugo v. Chater, 932 F. Supp. 497, 501 (S.D.N.Y. 1996) (citation omitted), adhered to on reconsideration, (Apr. 19, 1996).

An ALJ may rely solely on the Grids unless they do "not fully account for the claimant's limitations," in which case "the Commissioner must utilize other evidence, such as the testimony of a vocational expert," to determine if the claimant is capable of performing work that is available in significant numbers in the national economy. Taylor v. Barnhart, 83 F. App'x 347, 350 (2d Cir. 2003) (citation omitted). The ALJ is required to consult a vocational expert if "a claimant has nonexertional limitations that significantly limit the range of work permitted by his exertional limitations[.]" Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (emphasis added) (quotation marks and

citation omitted). "A nonexertional impairment will 'significantly limit' a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one, or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Lawler v. Astrue, 512 F. App'x 108, 111 (2d Cir. 2013) (internal citation and quotation marks omitted).

Plaintiff argues that the ALJ "erred in not having a vocational expert available to testify." Doc. #15-1 at 15. The entirety of plaintiff's argument on this issue is reproduced below:

> Plaintiff has a number of non-exertional impairments, including a cognitive disorder (or, to be ruled out, hypomania), mood disorder, along with complaints of poor memory, concentration, deterioration of executive function and significantly diminished IQ. At step 5 of the sequential evaluation process (described in detail in the decision, under the heading, "Applicable Law", at R. 12, et. seq.) the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education and work experience. See 20 CFR Secs. 404.1512(g) and 404.1560(c). The so-called "Grids", 20 CFR Subpt P, App II, form the framework for so deciding where an individuals characteristics match the criteria of a specific grid rule. Rosa v Callahan, 168 F. 3d 72, 82 (2nd Cir, 1999). However, where significant non-exertional impairments exist, the Grids are not sufficient, and the Administration must introduce the testimony of a vocational expert. Rosa, supra, at p. 82; Bapp v Bowen, 802 F. 2d 601,605 (2nd Cir 1986).

Doc. #15-1 at 15 (sic).

Plaintiff does not contend that the non-exertional impairments listed significantly limit her ability to work. Plaintiff does not cite to the record for support of her assertions. Neither the Proposed Stipulation of Facts nor the Chronology attached to plaintiff's memorandum provides support for significant limitations to plaintiff's ability to work, based on her non-exertional impairments. See Doc. #15-1 at 17-19. Here, the ALJ concluded that plaintiff's "ability to work at all exertional levels" had been "compromised by nonexertional limitations," but that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." Tr. 20.

As the ALJ explained, neuropsychological testing revealed that plaintiff has no "pervasive deficits" in the area of executive functioning; "she can follow basic directions with average concentration[;]" and is able to put forth "sustained concentration" and "good effort." Tr. 19, citing Exhibit 2F (Tr. 241-54). The same 2009 evaluation found plaintiff was "able to focus on tasks and to follow basic directions without confusion." Tr. 242. She showed no "mental slowing" and had average vigilance and sustained concentration, with no "elevated susceptibility to distraction." Id. Plaintiff tested as having average intelligence and average conceptual logic and

categorical reasoning skills. See Tr. 242-43. A 2012 evaluation performed in connection with plaintiff's disability application similarly found that plaintiff was of average intelligence, with all testing results for memory, processing, attention, language, and abilities in the low average, average, or high average ranges. See Tr. 444-45. The report of Dr. Lance Hart, upon which plaintiff places much weight, concluded that while she was in a manic state, plaintiff would be unable to work, but also found that plaintiff was of average intelligence, showing above average performance on some tests, and average or unremarkable performance on others. See Tr. 412-14. As previously discussed, this conclusory report by an examiner who met with plaintiff on one occasion was properly discounted by the ALJ because it was contradicted by the other evidence of record. See Tr. 18 (granting "some weight" to this opinion).

"The SSA has defined basic work activities to include: (1) understanding, carrying out, and remembering simple instructions, (2) use of judgment, (3) responding appropriately to supervision, co-workers and usual work situations, and (4) dealing with changes in a routine work setting." Lawler, 512 F. App'x at 111-12 (internal quotation marks omitted) (quoting 20 C.F.R. §416.921(b)). The ALJ found that plaintiff was capable of performing a full range of work, with the ability to

"understand, remember, and carry out simple instructions and routine repetitive tasks ... in a work setting free of hazards such as unprotected heights and moving machinery" and "free of loud background noise." Tr. 19. In other words, she was able to perform basic work activities. These findings are supported by substantial evidence of record.[8]

The Second Circuit has held, in light of similar findings by an ALJ: "[B]ecause there is substantial evidence that [plaintiff's] nonexertional impairments did not significantly limit the range of work permitted by her exertional limitations, the ALJ was not required to consult a vocational expert." Woodmancy v. Colvin, 577 F. App'x 72, 76 (2d Cir. 2014) (internal quotation marks and citation omitted). This rule is well-established. See, e.g., Zabala, 595 F.3d at 411 ("The ALJ found that Petitioner's mental condition did not limit her ability to perform unskilled work, including carrying out simple instructions, dealing with work changes, and responding to supervision. Thus, her nonexertional limitations did not result in an additional loss of work capacity, and the ALJ's use of the

---

[8] On appeal, plaintiff does not expressly challenge the adequacy of the non-exertional limitations provided for in the RFC. The only challenge to the non-exertional limitations found appears to be the rhetorical question: "Don't these questions [about possible mania] bear on her residual functional capacity?" Tr. 13.

Medical–Vocational Guidelines was permissible."); Lewis v. Colvin, 548 F. App'x 675, 678 (2d Cir. 2013) ("[W]here the ALJ determined that Lewis's additional limitations did not significantly limit his capacity to perform light work -- a determination supported by the record evidence -- it was not error to rely on the Medical–Vocational Guidelines to determine that jobs existed in the economy that Lewis could perform.").

A number of decisions in this District reach the same conclusion on similar facts. See, e.g., Stergue v. Colvin, No. 3:13CV25(RNC), 2016 WL 2930878, at *5 (D. Conn. May 19, 2016) ("Regarding plaintiff's mental limitations, the ALJ explained that plaintiff was capable of following 'simple instructions' and performing 'routine, repetitive tasks.' R. 850. Such a nonexertional limitation is not significant in terms of its impact on a claimant's possible range of work."); Cardenas v. Berryhill, No. 3:16CV01216(SALM), 2017 WL 3621073, at *12 (D. Conn. Aug. 23, 2017) ("[T]he ALJ was not required to seek the testimony of a VE, and the ALJ's reliance on the Grids was appropriate."); Goulart v. Colvin, No. 3:15CV1573(WIG), 2017 WL 253949, at *6 (D. Conn. Jan. 20, 2017) ("Here, a limitation to simple tasks and occasional interaction with others does not significantly limit the range of unskilled work. ... Accordingly, the ALJ was not required to call a VE in this

case."); <u>Brown v. Colvin</u>, No. 3:14CV1784(WIG), 2016 WL 2944151, at *5 (D. Conn. May 20, 2016) ("A limitation to occasional interaction with others does not significantly limit the range of unskilled work, and reliance on the Grids in such an instance is appropriate."); <u>Lipsett v. Colvin</u>, No. 3:13CV01746(VLB), 2016 WL 912163, at *11 (D. Conn. Mar. 7, 2016) (ALJ's failure to obtain VE testimony was not error: "Courts in this Circuit have noted that claimants with moderate limitations to social functioning can still access and maintain a range of unskilled employment."); <u>McRae v. Colvin</u>, No. 3:14CV1868(WIG)(VLB), 2016 WL 1323713, at *4 (D. Conn. Feb. 3, 2016), <u>report and recommendation adopted sub nom.</u>, <u>McCrae v. Colvin</u>, 2016 WL 1311998 (Apr. 4, 2016) ("Plaintiff has not shown that there are additional nonexertional limitations that significantly limit her range of work such that reliance on the Grids was inappropriate.").

The ALJ concluded that plaintiff's non-exertional impairments had "little or no effect on the occupational base of unskilled work at all exertional levels." Tr. 20. This finding was consistent with the case law, based on the RFC. The RFC was supported by substantial evidence of record. Accordingly, there was no error in the failure to secure the testimony of a VE.

## VI.  CONCLUSION

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #15]** is **DENIED**, and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #16]** is **GRANTED**.

SO ORDERED at New Haven, Connecticut, this 19th day of March, 2018.

```
                                    /s/
                         _____
                         HON. SARAH A. L. MERRIAM
                         UNITED STATES MAGISTRATE JUDGE
```